## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | | |
|---|---|---|
| -------------------------------------------------------------- X | Chapter 15 | |
| In re: : | | |
| : | Case No. 15-12048 (LSS) | |
| **ENERGY COAL S.P.A.,** : | | |
| : | | |
| : | | |
| Debtor in a Foreign Proceeding : | | |
| -------------------------------------------------------------- X | | |

## VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING AND FOR ADDITIONAL RELIEF AND ASSISTANCE UNDER 11 U.S.C. §§105(A), 1507, AND 1521

Augusto Ascheri, director and duly authorized foreign representative (the "Foreign Representative") of Energy Coal S.p.A. (the "Company") in the Company's *Concordato Preventivo* (the "Italian Concordato Proceeding"), pursuant to Section 160 of R.D. 267/1942 Italian Insolvency Law, (as amended the "IIL"), respectfully files this *Verified Petition* (the "Verified Petition") *under Chapter 15 of title 11 of the United States Code* (the "Bankruptcy Code") *for Recognition of a Foreign Main Proceeding and for Additional Relief and Assistance under 11 U.S.C. §§105(a), 1507 and 1521.* This Verified Petition is filed in furtherance of: (i) the *Official Form Petition* (collectively, with this Verified Petition, the "Petition")[1] filed contemporaneously herewith pursuant to Bankruptcy Code sections 1504 and 1515 commencing a case under chapter 15 ancillary to the Italian Concordato Proceeding; (ii) seeking recognition of the Italian Concordato Proceeding as a "foreign main proceeding"; and (iii) granting certain

---

[1] Contemporaneously herewith, the Foreign Representative is filing: (i) *Declaration of Giovanni Cristoffanini of Cristoffanini & Associates (Italian Bankruptcy Counsel) in Support of (I) Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding and for Additional Relief and Assistance under 11 U.S.C. §§105(a), 1507 and 1521 and (II) Ex Parte Application for Provisional Relief* (the "Italian Counsel Declaration") and (ii) *Declaration of Foreign Representative as Required by 11 U.S.C. § 1515 and in Support of the Ex Parte Application for Provisional Relief Pending Recognition of a Foreign Main Proceeding* (the "Foreign Representative Declaration"). All exhibits referred to herein are attached to the Italian Counsel Declaration or the Foreign Representative Declaration, as applicable. In addition, all capitalized terms not otherwise defined herein have the meaning ascribed to them in the Italian Counsel Declaration.

related relief (including the *vacatur* of certain Rule B attachment proceedings currently pending against the Company and its property).

The Foreign Representative has commenced this chapter 15 case by filing the Petition contemporaneously with, and accompanied by, all certified documents, statements, lists and documents required under chapter 15 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Code sections 109 and 1501, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1410.

## BACKGROUND

**A.  Overview of the Company**

3.      The Company was incorporated under the laws of Italy in 1997 and maintains its registered office at Via San Vincenzo 2, 16121 Genova, Italy.  The Company is primarily engaged in trading in coal and other raw material, including petroleum coke.  The Company is a part of a group of companies headed by parent company ICE Holding S.r.L.  The Company currently has outstanding 9,000,000 shares of stock and ICE Holding holds approximately 77.35% of the outstanding stock.  No other entity or person holds in excess of 10% of the outstanding stock of the Company. The Company currently has 21 employees, all located in Genova, Italy.

4.      Most recently, the Company reported revenues of €88 million, which equates to

approximately USD $98,425,800.[2]   The Company has assets valued at approximately €58 million (USD $64,871,550) and liabilities of approximately €185 million (USD $206,917,875), of which approximately €5 million (USD $5,592,375) constitute secured liabilities.

5.      The Company regularly trades in various ports in the United States (including in the port of Wilmington, Delaware) as a core part of its business.  Currently, the vessel M/V Coretalent OL (the "Vessel"), subject to a voyage charter with the Company's wholly-owned subsidiary, Energy Coke S.r.L. ("Energy Coke"), is located at the Marcus Hook Anchorage.  On board the Vessel is approximately 26,000 metric tons of petroleum coke owned by the Company (the "Cargo").[3]  As discussed more fully below, the Company owned Cargo is subject to Rule B attachment proceedings currently pending before the United States District Court for the District of Delaware.[4]

### B.  The Company's Financial Difficulties

6.      The corporate performance of the Company in the past several years has been affected significantly by its commercial relations with the Venezuelan state-owned oil and natural gas company, Petroles de Venezuela ("PDVSA").  Beginning in 2011, the Company entered into certain contracts with PDVSA in connection with the Company's management of the extraction, processing and exportation of petroleum.  Among other things, these contracts called for the Company to be compensated for services rendered by providing the Company with petroleum coke.

---

[2]   All values provided in US Dollars are estimates based on publically available exchange rate data as of or immediately prior to the date hereof and are therefore subject to change.

[3] Documents evidencing the Company's ownership interest in the Cargo are attached as **Exhibit B** to the Foreign Representative Declaration.

[4] The Vessel was located at the Port of Wilmington, Delaware, but, pursuant to the District Court's order, was moved to the Marcus Hook Anchorage.

7.      The Company provided approximately $169 million worth of services to PDVSA. However, at the end of 2013, the PDVSA discontinued the provision of petroleum coke and did not otherwise satisfy the amounts owed to the Company.  As a result, on or about September 12, 2014, the Company brought an action in the United States against PDVSA's wholly owned subsidiary, CITGO Petroleum Corporation (the "CITGO Action").  The CITGO Action, which was pending before the United States District Court for the Western District of Louisiana,[5] was recently dismissed on jurisdictional grounds.  The Company filed an appeal on September 24, 2015.  *See Energy Coal, S.p.A. v. CITGO Petroleum Corp.*, No. 2:14-cv-03092, D.I. 46 (W.D. La. September 24, 2015) (Notice of Appeal).

8.      In July 2014, PricewaterhouseCoopers Advisory S.p.A. was retained to, among other things, assist with a potential restructuring of the Company's debts.  During this time period, the Company's financial position continued to deteriorate, necessitating the filing of the Italian Concordato Proceeding.   In the past year, the Company has experienced losses of approximately €7,998,707.00 (USD $8,946,353.81).

**C.  The Italian Concordato Proceeding**

9.      In order to provide the Company with the protection needed to reorganize its financial affairs, an application for *Concordato Preventivo* under the IIL was filed by the Company on April 13, 2015 (the "Concordato Application") in the Court of Genova, Bankruptcy Section (the "Italian Bankruptcy Court").[6]  Thereafter, the Italian Bankruptcy Court received the

---

[5] The CITGO Action was originally filed in the Louisiana State Court, 14th Judicial District.  However, it was removed to federal court.

[6] A true and correct English translation copy of the Company's Concordato Application is attached as **Exhibit A** to the Italian Counsel Declaration.

Concordato Application and, on April 16, 2015, entered an order commencing the Italian Concordato Proceeding with respect to the Company ("Commencement Order").[7]

10.    A *Concordato Preventivo* proceeding in Italy follows the "debtor-in-possession" model embodied in Chapter 11 of the U.S. Bankruptcy Code.  Specifically, it provides a court-supervised procedure by which a business facing financial difficulties may seek to reach an agreement with its creditors by proposing a debt restructuring plan.

11.    Pursuant to the IIL, and previous orders of the Italian Bankruptcy Court, the Company is currently under a deadline of October 10, 2015, to submit a debt restructuring plan. During this time, the Company is entitled to carry out ordinary course operations, providing regular reports to the Italian Bankruptcy Court.  However, transactions outside the ordinary course of business are prohibited, unless approved by the Italian Bankruptcy Court.

12.    In addition, upon filing the Concordato Application, as soon as the request for *Concordato Preventivo* is published in the competent Company Register (this occurs the day after the filing of the Concordato Application) a mandatory and  automatic stay of actions against the Company and its property went into effect.  This automatic stay remains in place until the Company's restructuring plan is approved and becomes final.[8]

---

[7] A certified copy of the Commencement Order with English translation is attached as **Exhibit B** to the Italian Counsel Declaration.

[8] Specifically, section 168 of the IIL provides in relevant part:

> From the date of publication of the [Concordato Application]… and up to the moment in which the decree of approval of the arrangement of creditors becomes definitive, creditors… may not, under penalty of nullity, initiate or continue to pursue enforcement action, including protective measures, on the debtor's assets.

900200.00001/101488890v.4

### D.  Establishment of Energy Coke

13.    Many of the Company's suppliers of petroleum coke are publicly traded companies and, for various reasons, are unable to conduct business with a company involved in insolvency proceedings.  As such, most of the Company's suppliers required the Company to establish a non-debtor subsidiary.  In order to avoid a substantial disruption in its petroleum coke business, on March 25, 2015, the Company established Energy Coke.  On April 10, 2015, the Company and Energy Coke entered into an agreement whereby Energy Coke leased the Company's petroleum coke business unit (the "Energy Coke Lease").

14.    Subsequent to the filing of the Company's Concordato Application, many of the same petroleum coke suppliers decided to continue dealing directly with the Company. Accordingly, on August 11, 2015, the Company sought Italian Bankruptcy Court approval to terminate the Energy Coke Lease.  On August 13, 2015, the Italian Bankruptcy Court entered an order authorizing the Company to terminate the Energy Coke Lease (the "Lease Termination Order").  On the same date, the Company and Energy Coke entered into an agreement which, among other things, terminated the Energy Coke Lease (the "Lease Termination Agreement").[9]

### E.  The Pending Rule B Litigation and Other Pending Litigation

15.    The Company is involved in two recently filed lawsuits pending in the United States District Court for the District of Delaware (the "District Court") filed by Danish creditors of the Company: (i) *Falcon Navigation A/S v. Energy Coal SPA and Energy Coke SRL* (Case No. 15-cv-00861) and (ii) *XO Shipping A/S v. Energy Coal SPA and Energy Coke SRL* (Case No. 15-

---

[9] True and correct English translation copies of the Lease Termination Order and the Lease Termination Agreement are attached to the Italian Counsel Declaration as **Exhibits C & D** respectively.

cv-00862) (collectively, the "Rule B Actions").[10]   The Rule B Actions were filed on September 22, 2015.

16.     The plaintiffs in the Rule B Actions (the "Rule B Plaintiffs") each assert that the Company (and Energy Coke as an alleged *alter ego* of the Company) owes money pursuant to certain voyage charters between the Rule B Plaintiffs and the Company and each asserts fraudulent transfer claims against Energy Coke in respect of the Cargo.[11]   In connection with the Rule B Actions, the plaintiffs have sought and, pursuant to an order of the District Court on September 23, 2015, have obtained an attachment of the Company's Cargo.[12]

17.     Both of the Rule B Actions and resulting attachment of the Company's Cargo, occurred well after the Company filed its Concordato Application and the automatic stay provisions of section 168 of the IIL went into effect. Accordingly, the Company is seeking the vacation of the Rule B attachments through this chapter 15 and the relief requested by this Verified Petition, pursuant to sections 1507 and 1521 of the Bankruptcy Code.

18.     In addition to the Rule B Actions and the CITGO Action, the Company is a defendant in a civil action currently pending before the Supreme Court of the State of New York styled *Thyssenkrupp Minenergy GmbH n/k/a Thyssenkrupp Metallurgical Products GmbH v. Energy Coal S.p.A.* (Index No. 652748/2012) (the "Thyssenkrupp Litigation").   The Company

---

[10] True and correct copies of the Rule B Action complaints are attached to the Italian Counsel Declaration as **Exhibits E & F**.

[11] On July 3, 2015, Energy Coal, not Energy Coke, entered into a *Sale and Purchase Contract* for the Cargo with a customer.  The Cargo was prepaid by Energy Coal and transferred by the seller to Energy Coal prior to the Cargo being shipped to the M/V Coretalent OL.  This occurred pursuant to invoicing that also identified Energy Coal as the buyer of the coal from the seller and its owner.  All of these transactions were consistent with the termination of the Energy Coke Lease and all occurred prior to the attachment.

[12] Each of the above-referenced actions is in the nature of a pre-judgment attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Cases of the Federal Rules of Civil Procedure.  Rule B process can only issue against beneficial owners of property subject to attachment.  *See Austral Asia PTE Ltd. v SE Shipping Lines PTE Ltd., et al.*, 2012 WL 2567149, *2 (E.D.La.2012).

900200.00001/101488890v.4

also believes that it currently has approximately fifteen (15) creditors based on the United States (the "U.S. Creditors").

19.     The Rule B Actions and the CITGO Action coupled, with the Thyssenkrupp Litigation and the existence of the U.S. Creditors, underscore the need to protect the Company's valuable trade in the United States, by recognizing the Italian Concordato Proceeding and staying creditor action against Company assets in the United States.

### STATUTORY BASIS FOR RELIEF REQUESTED

20.     Chapter 15 of the Bankruptcy Code was specifically designed to assist the Foreign Representative in the performance of his duties.  One of its express objectives is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3); *see also In re ABC Learning Centers Limited,* 728 F.3d 301, 306 (3d Cir. 2013) *cert. denied*, *RCS Capital Development, LLC v. ABC Learning Centers Limited*, 134 S.Ct. 1283 (2014); *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 132 (2d Cir. 2013); *In re Irish Bank Resolution Corp. Ltd.*, No. 13-12159 (CSS), 2014 WL 9953792, at *9 (Bankr. D. Del. Apr. 30, 2014) aff'd, No. BR 13-12159-CSS, 2015 WL 4634831 (D. Del. Aug. 4, 2015) (hereinafter "IBRC") ("The purpose of Chapter 15 and the Model Law on which it is based, is to provide effective mechanisms for dealing with insolvencies involving debtors, assets, claimants, and other parties in interest involving more than one country"); *In re Rede Energia S.A.*, 515 B.R. 69, 89-92 (Bankr. S.D.N.Y. 2014); *In re Grant Forest Prods., Inc.*, 440 B.R. 616, 621 (Bankr. D. Del. 2010) ("Chapter 15 of the Bankruptcy Code is designed to promote cooperation between courts of the United States and courts in other countries involved in cross-border insolvencies").

21.     The Petition satisfies all of the requirements set forth in Bankruptcy Code section

1515.   Moreover, the relief requested is necessary and appropriate under chapter 15 of the Bankruptcy Code.  Granting recognition to the Italian Concordato Proceeding and the relief requested herein is consistent with the goals of international cooperation and assistance to foreign courts, embodied in chapter 15 of the Bankruptcy Code.

22.   The Foreign Representative submits that the relief sought herein is well within the scope of chapter 15 and meets the criteria for recognition.

## RELIEF REQUESTED

23.   The Foreign Representative seeks recognition of the Italian Proceeding as a "foreign main proceeding" and hereby seeks entry of an order of this Court, substantially in the form of the *Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 105(a), 1517, 1520 and 1521*, attached hereto as Exhibit 1, (the "Proposed Order") granting the following relief in support of the Italian Concordato Proceeding:

(a)   recognition of the Italian Concordato Proceeding as a "foreign main proceeding" as defined in 11 U.S.C. § 1502(4) pursuant to 11 U.S.C. § 1517;

(b)   recognition of Foreign Representative as the "foreign representative" of the Company within the meaning of 11 U.S.C. § 101(24) and for all purposes under chapter 15 of the Bankruptcy Code;

(c)   all relief afforded foreign main proceedings automatically upon recognition, including the "automatic stay" under Bankruptcy Code section 362, as of right pursuant to 11 U.S.C. § 1520, or, if not as of right, then as additional relief to the extent authorized by 11 U.S.C. § 1521.

24.   The Foreign Representative also hereby seeks the following additional relief

9

pursuant to 11 U.S.C. §§ 105(a), 1504, 1507, 1515, 1517, 1519, 1520 and 1521 and, if and as necessary, Rule 65 of the Federal Rules of Civil Procedure as made applicable herein by Rule 7065 of the Federal Rules of Bankruptcy Procedure, as set forth in the form of the Proposed Order, including, without limitation:

    (a)    all of the following relief:

        i.    ordering any person or entity, including the Rule B Plaintiffs, that has arrested or attached any of the Company's assets in the United States (including the Cargo) under Rule B or otherwise on or after April 13, 2015, to release any such arrest or attachment;

        ii.    staying any action to terminate any contract or any other action to modify any contract or other intangible property right of the Company;

        iii.    staying the commencement or continuation of any action or proceeding concerning the Company's assets (whether owned, leased or operated), rights, obligations or liabilities of the Company (including the Rule B Actions and the Thyssenkrupp Litigation) to the extent not stayed under 11 U.S.C. § 1520(a);

        iv.    staying the continued prosecution (including discovery) of any ongoing litigation against the Company and the commencement of any additional actions against the Company (to the extent not already stayed by an order of this Court);

        v.    staying execution against the assets of the Company to the extent not stayed under 11 U.S.C. § 1520(a);

vi.  authorizing the Foreign Representative to examine witnesses, take evidence or seek the delivery of information;

vii.  authorizing the Company, through the Foreign Representative, to continue the CITGO Action, and/or any appeal in connection therewith**;**

viii.  authorizing the Company, through the Foreign Representative, to post a bond or other acceptable substitute collateral in connection with the Rule B Actions;

ix.  recognizing any further orders of the Italian Bankruptcy Court, including, without limitation, orders relating to any debt restructuring plan of the Company, the administration of claims and interests in the Company and its assets, and permitting the Foreign Representative and the Company to seek further implementing relief from the Court under Bankruptcy Code sections 1519(a) and 1521(a); and

(b)  such other and further relief as the Foreign Representative may request from time to time, to the extent authorized by 11 U.S.C. § 1507 and additional assistance as authorized by 11 U.S.C. § 1507, and granting the Foreign Representative such other and further relief as this Court may deem just and proper.

25.  Granting the above relief and recognizing the Italian Concordato Proceeding will ensure that the Company's affairs are expeditiously resolved, thus such relief is consistent with the goals of chapter 15.

**BASIS FOR RECOGNITION AND RELIEF REQUESTED**

I. **Recognition and the Relief Resulting Therefrom is Appropriate**

26.    Bankruptcy Code section 1517 provides that, after notice and a hearing, an order recognizing a "foreign proceeding" shall be entered if "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representatives applying for recognition are persons or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a). Recognition of a foreign proceeding is typically straightforward.  *See In re Bear Stearns High Grade Structured Credit Strategies Master Fund Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007); *see also IBRC, supra,* at *10 (recognition requirements can be characterized as "minimal"); *cf., In re ABC Learning Centers Limited*, 445 B.R. 318, 332 (Bankr. D. Del. 2011) *aff'd* 728 F.3d 301 (3d Cir. 2013) (recognition is nevertheless not a "rubber stamp exercise"). It should be noted that Italian *Concordato Preventivo* proceedings have been granted recognition by courts in the United States pursuant to Bankruptcy Code section 1517(a).  *See*, *e.g.*, *In re Rizzo Bottiglieri-De Carlini Amratori S.P.A.*, No. 15-32041 (Bankr. S.D. Tex. April 13, 2015).

A. **The Italian Concordato Proceeding is a Foreign Proceeding and Mr. Ascheri is the Company's Foreign Representative**

27.    Bankruptcy Code section 101(23) provides the definition for a "foreign proceeding":

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23); *see also ABC Learning Centers*, *supra,* 728 F.3d at 308 ("This definition

can be broken down into seven elements:   (i) a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation"); *see also IBRC*, *supra* at *12-14.

28.    The Italian Concordato Proceeding is conducted before the Italian Bankruptcy Court pursuant to a "statutory framework that constrains" Energy Coal's actions and "regulates the final distribution of [Energy Coal's] assets."  IBRC, *supra* at *12.  The IIL includes and governs the "mechanism for commencing the [Italian Concordato Proceeding], the effect on corporate governance, the duties and responsibilities of [fiduciaries], the rights of creditors, including priorities."  *Id*.; Italian Counsel Declaration.  The Italian Concordato Proceeding is clearly a "proceeding" for the purposes of chapter 15.

29.    Bankruptcy Code section 101(24) provides the definition of a "foreign representative":

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

30.    On September 26, 2015, the Company's board of directors formally authorized this chapter 15 filing and further authorized Mr. Ascheri, the chairman of the board, to act as foreign representative on connection with this chapter 15 case.  A certified copy, in English translation, of the relevant board resolution is attached to the Foreign Representative Declaration

as **Exhibit A**. Given his specific authority by the Company's board of directors, Mr. Ascheri qualifies as a "foreign representative" of the Company. *See, e.g., Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1042 (5th Cir. 2012); *In re OAS S.A.*, 533 B.R. 83, 95 (Bankr. S.D.N.Y. 2015); *see also IBRC, supra* at *17 (foreign representative's authority derives from a non-judicial but legal appointment under applicable foreign law).

31.     Moreover, for the reasons set forth above and in the Italian Counsel Declaration, it is beyond cavil that the IIL is a collective insolvency law, designed to optimize recoveries for creditors and other stakeholders and provide a real opportunity for the survival of troubled companies through reorganization, "consider[ing] the rights and obligations of all creditors." *See ABC Learning Centers*, *supra* 445 B.R. at 328.

**11     The Italian Concordato Proceeding is a Foreign Main Proceeding**

32.     A foreign proceeding will be recognized as a foreign main proceeding if "it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). Bankruptcy Code section 1516 establishes a rebuttable presumption that the debtor's registered office is the debtor's center of main interests ("COMI"). *See* 11 U.S.C. § 1516; *see also IBRC, supra* at *16. When considering a debtor's COMI, courts may consider the analogous concept of an entity's "principal place of business" or "nerve center." *Fairfield Sentry*, *supra,* 714 F.3d at n.10. As such, courts will look to factors such as the location of the debtor's headquarters, the location of those who actually manage the debtor, and the location of the debtor's primary assets, among other things, to determine the foreign debtor's COMI. *Id.* at 130; *see also ABC Learning Centers*, *supra,* 445 B.R. at 328.

33.     The above factors conclusively favor a finding that the Company's COMI is Italy.

14

All of the Company's operations are centered in Italy, its registered and head office is located in Italy, its directors are located in Italy, it is incorporated under the laws of Italy, and all of its employees work in Italy where the Company's financial, legal and operational nerve center is located.  As such, the Italian Concordato Proceeding constitutes a foreign main proceeding.

**12     The Italian Concordato Proceeding Meets the Remaining Requirements for Recognition**

34.     The Petition and the supporting documentation satisfy all the remaining requirements for recognition. First, the Foreign Representative is an individual, and thus, a "person" within the meaning of Bankruptcy Code section 101(41).

35.     In addition, Foreign Representative has satisfied all of the procedural requirements set forth in Bankruptcy Code section 1515 and Bankruptcy Rule 1007(a)(4):

(a)     <u>First</u>, the Petition is accompanied by: (i) a certified copy of the Commencement Order, which provides evidence of the existence of a foreign proceeding in Italy and (*See* Exhibit B to the Italian Counsel Declaration) (ii) a board resolution appointing Mr. Ascheri as "foreign representative" of the Company (*See* Exhibit A to the Foreign Representative Declaration).  As a result, the Foreign Representative has satisfied the requirements of Bankruptcy Code section 1515(b).  *See* 11 U.S.C. § 1515(b)(1).

(b)     <u>Second</u>, the Foreign Representative has provided a statement confirming that there are no other foreign proceedings other than the Italian Concordato Proceeding, thereby satisfying Bankruptcy Code section 1515(c).

900200.00001/101488890v.4

(c)     <u>Third</u>, all the documents supporting the Petition have been translated into

in English, thereby satisfying Bankruptcy Code section 1515(d).

(d)     <u>Finally</u>, the lists and statements required under Bankruptcy Rule

1007(a)(4) have been included with the Petition.

36.     Accordingly, the Foreign Representative and the Petition satisfy all of the

requirements for recognition of the Italian Concordato Proceeding as a foreign main proceeding.

## II.     <u>Requiring the Rule B Plaintiffs to Vacate Their Attachments is Appropriate</u>[13]

37.     Vacation of the Rule B attachments is authorized pursuant to sections 105(a),

1507, and 1521 of the Bankruptcy Code.  Upon and after recognition of a foreign proceeding,

section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the

recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and

to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a); *see In re*

*Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009) (discretion granted to court to

order relief following recognition of foreign proceeding is "exceedingly broad," since court may

grant "any appropriate relief" that would further purposes of chapter 15 and protect debtor's

assets and interest of creditors); *see also Grant Forest Prods. supra*, 440 B.R. at 616

(Bankruptcy Code section 1521 power is "broad," but must be exercised to "assist in the efficient

administration of this cross-border insolvency proceeding" so as not harm the interests of the

debtors and their creditors, ensuring sufficient protection of creditors interests under Bankruptcy

Code section 1522); <u>In re Grand Prix Assocs. Inc.</u>, No. 09-16545, 2009 WL 1850966, at *3

(Bankr. D.N.J. June 26, 2009) ("Section 1521 provides the relief that may be granted upon

recognition in an effort to promote Chapter 15's purposes, the efficient administration of the

---

[13] The Foreign Representative will submit a supplemental memorandum of law discussing in greater detail the legal

estate, and the protection of the debtor's assets and the creditor's interests").

38.     Bankruptcy Code section 1521(a) specifically authorizes the Court to grant relief: (i) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative, and (ii) any additional relief that may be available to a trustee.   11 U.S.C. § 1521(a) (5) and (7).   As stated in *Atlas* during its discussion of relief sought under section 1521(a)(5), "[i]ncident to the task of administering and realizing assets of the debtor within the U.S. is the need to obtain affirmative control over such assets.  It may be necessary to obtain turnover of assets in the hands of third parties."  *Atlas*, *supra,* 404 B.R. at 740 (quoting Leif M. Clark, ANCILLARY & OTHER CROSS-BORDER INSOLVENCY CASES UNDER CHAPTER 15 OF THE BANKRUPTCY CODE, § 7[2], at 73). Similar to *Atlas*, the Foreign Representative asks the Court to require the Rule B Plaintiffs to vacate their Rule B attachments so that the Foreign Representative can be entrusted with the administration of the Cargo in connection with administering the Company's property through the Italian Concordato Proceeding.   This relief is especially appropriate given that the Rule B Plaintiffs obtained their attachments on the Company's Cargo well after the stay in the Italian Concordato Proceeding was in effect.  *See e.g., id.* at 733-36.

39.     Moreover, the vacatur requested here has been previously granted under Bankruptcy Code section 304 and therefore is appropriate relief under section 1521(a).  *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987) (affirming district court's vacatur of maritime attachment against debtor in Swedish bankruptcy proceeding and noting the particular need to extend comity to foreign bankruptcy proceedings); *accord Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) (affirming district

---

bases supporting the request to vacate the attachments obtained via the Rule B Actions.

court's vacatur of Rule B attachment against debtor in Swedish bankruptcy proceeding and noting "[t]he granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion"); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding."); *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) (the Second Circuit "repeatedly noted the importance of extending comity to foreign bankruptcy proceedings," since "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding."); *see also ABC Learning Centers, supra,* 728 F.3d at 310 (prohibiting a creditor from using a U.S. attachment to "skip ahead of the priorities of [pre-foreign insolvency] secured creditors" as required by Australian law because permitting the creditor (and other U.S. creditors) from attaching the foreign debtor's assets in the United States "would eviscerate the orderly liquidation proceeding, and ignores all priority of debts.  Efficient, orderly and fair distributions are not only the policies behind the collective proceeding requirement but are 'some of the chief principals of the bankruptcy laws'").

40.     In granting discretionary relief, the court may also act pursuant to section 1507 to provide "additional assistance" to a foreign representative under the Bankruptcy Code or other U.S. law.  *See* 11 U.S.C. § 1507(a).[14]  Moreover, section 105(a) of the Bankruptcy Code provides

---

[14] Section 1507(b) sets forth the factors that the court must consider when determining whether to provide additional assistance to a foreign representative under section 1507 of the Bankruptcy Code. Consistent with the principles of comity, the court must consider whether the additional assistance will reasonably assure: (i) just treatment of all creditors and equity holders, (ii) protection of United States creditors against prejudice and inconvenience of processing claims in the foreign proceeding, (iii) prevention of preferential or fraudulent disposition of property, (iv)

that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

41.     Vacating the Rule B attachments preserves the integrity and efficient administration of the Italian Concordato Proceeding and enables the Company to take advantage of the respite of the Italian mandatory stay and provides it to do business and develop a plan of arrangement, benefitting all creditors, including the Rule B Plaintiffs.  The Rule B Plaintiffs' rights as creditors are sufficiently protected by their continuing ability to participate in the collective remedy afforded by the Italian Concordato Proceeding.   See 8 COLLIER ON BANKRUPTCY ¶1521.03 (16th ed.).

### <u>RESERVATION OF RIGHTS</u>

42.     Pursuant to Bankruptcy Code sections 105(a), 1507, 1519(a) and 1521(a), the Foreign Representative hereby reserves all rights to seek, at any point (either before or after a change in circumstances under Bankruptcy Code section 1518), further and other relief from this Court that may be necessary to implement the Italian Concordato Proceeding and to effectuate the purposes of chapter 15, including, without limitation, seeking to enforce the Italian stay and implement and effectuate any plan of debt restructuring plan filed by the Company and approved by the Italian Bankruptcy Court and any related orders of the Italian Bankruptcy Court.

---

distribution of proceeds of the debtor's property substantially in accordance with the Bankruptcy Code, and (v) if appropriate, provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns. *See* 11 U.S.C. § 1507(b).   Should the Court determine that relief under Bankruptcy Code section 1521 is inappropriate, the Company requests that the Court grant the relief requested herein under section 1507 based on the overarching policy of according comity to the Italian Concordato Proceeding and preserving the Company's ability to manage its rehabilitation for the benefit of the <u>collective</u> creditor body and not just the Rule B Plaintiffs who seek to be preferred through their improper attachment of Company property. *See In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 696 (Bankr. S.D.N.Y. 2010) ("Section 1507 directs the court to consider comity in granting additional assistance to the foreign representative"); *Atlas*, 404 B.R. at 738 ("Once a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity.").

## HEADING DATE AND NOTICE

43.     The Foreign Representative requests that the Court set a date for a hearing (the "Hearing Date") pursuant to Bankruptcy Code section 1517(c) to approve the Petition, recognize the Italian Concordato Proceeding as a foreign main proceeding, and grant the related relief requested herein. If no objections to this Petition are filed by the date ordered for such objections, the Foreign Representative requests that the Court enter the Proposed Order granting the relief requested herein without a hearing.  The Foreign Representative submits that when the Hearing Date has been set by the Court, notice will be given as reasonable and appropriate and consistent with Bankruptcy Rule 2002(q).

44.     In furtherance of this request, contemporaneously herewith, the Foreign Representative has filed the *Application for Order Scheduling Hearing on Chapter 15 Petition and Specifying Form and Manner of Service of Notice of Hearing*.

[*Remainder of Page Intentionally Left Blank*]

20

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that this Court grant the

relief requested and such other and further relief as may be just and proper.

Dated: October 2, 2015

ENERGY COAL S.p.A

By:_____

Augusto Ascheri, foreign representative of Energy
Coal S.p.A.

Dated: October 2, 2015

**BLANK ROME LLP**

_____

Victoria A. Guilfoyle (DE No. 5183)
Josef W. Mintz (DE No. 5644)
Alan M. Root (DE No. 5427)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Email: Guilfoyle@BlankRome.com
         Mintz@BlankRome.com
         Root@BlankRome.com

         -and-

Michael B. Schaedle, Esq.
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5500
Fax: (215) 832-5555
Email: Schaedle@BlankRome.com

*Counsel to the Foreign Representative of
Energy Coal S.p.A.*