# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY COAL S.P.A.,<br><br>Foreign Debtor. | Chapter 15<br><br>Case No. 15-12048 (LSS) |

## MEMORANDUM REGARDING RECOGNITION MOTION

Before the Court is the Final Report and Motion of Augusto Ascheri, Foreign Representative of Energy Coal, S.P.A. for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 350, 1507, 1509, 1517, 1521, and 1525 (I) Recognizing and Giving Full Force and Effect to Homologation Order Entered in Furtherance of the Company's Italian Debt Restructuring Plan; and (II) Authorizing Procedure to Close the Above-Captioned Chapter 15 Case ("Recognition Motion")[1] and the objections and responses filed thereto by MacEachern Energy LLC ("MELLC") and Christina MacEachern (collectively, "Objectors").[2] The Court held an evidentiary hearing on May 11, 2017 ("Hearing"), heard argument, and took the matter under advisement. Having reviewed the matter,[3] the Court **FINDS** and **CONCLUDES** as follows.

---

[1] Jan. 30, 2017, D.I. 92.

[2] Response and Partial Objection by MacEachern Energy LLC and Christina MacEachern, U.S. Creditors to the Motion of Augusto Ascheri, Foreign Representative of Energy Coal, S.P.A. for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 350, 1507, 1509, 1517, 1521, and 1525 (I) Recognizing and Giving Full Force and Effect to Homologation Order Entered in Furtherance of the Company's Italian Debt Restructuring Plan; and (II) Authorizing Procedure to Close the Above-Captioned Chapter 15 Case, Feb. 17, 2017, D.I. 94 ("Initial Objection"); Response by MacEachern Energy LLC and Christina MacEachern, U.S. Creditors to an Order Pursuant to 11 U.S.C. §§ 105(a), 350, 1507, 1509, 1517, 1521, and 1525 (I) Recognizing and Giving Full Force and Effect to Homologation Order Entered in Furtherance of the Company's Italian Debt Restructuring Plan; and (II) Authorizing Procedure to Close the Above-Captioned Chapter 15 Case, Feb. 28, 2017, D.I. 99 ("Additional Objection" and together with the Initial Objection, "Objections").

[3] These findings of fact are gleaned from the exhibits admitted into evidence at the Hearing and constitute findings of fact as contemplated by Fed. R. Civ. P. 52(a)(1). The evidence includes

1.  On April 13, 2015, Energy Coal, S.p.A. filed an application for Concordato Preventivo under the Italian Insolvency Law ("IIL") in the Tribunale di Genova, Sezione Fallimentare ("Genova Bankruptcy Court").[4] On April 16, 2015, the Genova Bankruptcy Court entered an order commencing the Concordato Preventivo.[5] The Genova Bankruptcy Court appointed Auguso Ascheri ("Foreign Representative") as the foreign representative of Energy Coal.

2.  On October 2, 2015, the Foreign Representative filed a verified petition under chapter 15 of the United States Bankruptcy Code together with a motion seeking, among other things, recognition of the Concordato Preventivo as a foreign main proceeding and a stay of litigation pending in any United States court.[6] After the consensual resolution of objections filed by certain litigation parties, and the granting of certain provisional relief, on

---

Exhibits 1-4 submitted by the Foreign Representative, Exhibits A and B submitted by Objectors, the Declaration of MacEachern Energy LLC and Christina MacEachern Objecting to the Motion of Augusto Ascheri, Foreign Representative of Energy Coal, S.P.A. for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 350, 1507, 1509, 1517, 1521, and 1525 (I) Recognizing and Giving Full Force and Effect to Homologation Order Entered in Furtherance of the Company's Italian Debt Restructuring Plan; and (II) Authorizing Procedure to Close the Above-Captioned Chapter 15 Case and the exhibits thereto, May 2, 2017, D.I. 115 ("MacEachern Decl."), the Declaration of Giovanni Cristoffanini of Cristoffanini & Associates (Italian Bankruptcy Counsel) in Support of Final Report and Motion of Augusto Ascheri, Foreign Representative of Energy Coal, S.P.A. for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 350, 1507, 1509, 1517, 1521, and 1525 (I) Recognizing and Giving Full Force and Effect to Homologation Order Entered in Furtherance of the Company's Italian Debt Restructuring Plan; and (II) Authorizing Procedure to Close the Above-Captioned Chapter 15 Case, Jan. 30, 2017, D.I. 93 ("Cristoffani Decl."), and the Supplemental Declaration of Giovanni Cristoffanini of Cristoffanini & Associates (Italian Bankruptcy Counsel) in Support of Final Report and Motion of Augusto Ascheri, Foreign Representative of Energy Coal, S.P.A. for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 350, 1507, 1509, 1517, 1521, and 1525 (I) Recognizing and Giving Full Force and Effect to Homologation Order Entered in Furtherance of the Company's Italian Debt Restructuring Plan; and (II) Authorizing Procedure to Close the Above-Captioned Chapter 15 Case, Feb. 24, 2017, D.I. 96 ("Cristoffanini Suppl. Decl."). Additionally, the Court took the testimony of Ms. Barbara Gambaro and Mr. Christopher MacEachern.

[4] Cristoffani Decl. at ¶ 7.
[5] *Id.*
[6] Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and for Additional Relief and Assistance under 11 U.S.C. §§ 105(a), 1507, and 1521, Oct. 2, 2015, D.I. 3.

November 12, 2015, the Court entered an unopposed order recognizing the Corcordato Preventivo as a foreign main proceeding and granting certain additional relief.[7]

3. While the chapter 15 case remained relatively silent thereafter, the Foreign Representative took steps in the Genova Bankruptcy Court to obtain approval of a composition proposal and plan in the Concordato Preventivo.

4. On October 10, 2015, Energy Coal submitted an initial version of a debt restructuring plan to the Genova Bankruptcy Court.[8] The plan was later amended on December 31, 2015.[9] By decree entered on February 26, 2016, the Genova Bankruptcy Court declared Energy Coal's Concordato procedure "open" and scheduled a hearing for creditors to solicit acceptances ("Adunanza dei Creditori") of the amended plan ("Plan").[10] The Andunanza dei Creditori took place on June 1, 2016.[11]

5. After the Andunanza dei Creditiori and the requisite solicitation period, Energy Coal's creditors approved the Plan, with approximately 87% of the company's creditors accepting the Plan.[12]

6. The Genova Bankruptcy Court held a hearing on September 28, 2016, to consider whether to enter an order of homologation for the Concordato Preventivo. No creditors opposed the Plan. On October 3, 2016, the Genova Bankruptcy Court entered the Homologation Order approving the Plan.[13]

---

[7] Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 105(a), 1517, 1520 and 1521, Nov. 12, 2015, D.I. 70.
[8] Cristoffanini Decl. ¶ 12.
[9] *Id.* at ¶ 12, Exhibit 2.
[10] *Id.* at ¶ 15.
[11] *Id.* at ¶ 15.
[12] *Id.* at ¶ 17.
[13] *Id.* at ¶¶ 18–19, Exhibit 3.

7.      Emerging from the Concordato Preventivo, Energy Coal remains a going concern. It will remain in the same business, focused on trading commodities, and will continue to source certain product from the United States.[14]

8.      Under the Plan, Energy Coal will use the revenue of its ongoing operations to fund payments to creditors.[15] The Plan provides that all administrative expenses and claims of secured creditors are to be paid in full.[16] Unsecured creditors are divided into five classes with treatment as specified in the Plan, which generally provides for payment of 1% to 7% of the approved claim amount depending on the class in which the claim falls, plus certain additional consideration if Energy Coal's balance sheet reflects a "Distributable Surplus" as defined in the Plan.[17]

9.      Under the IIL, the entry of the Homologation Order serves to discharge Energy Coal from claims identified in the Plan and the order has the force of an injunction enforcing the discharge and the restructuring contained in the Plan.[18]

10.     On January 30, 2017, the Foreign Representative filed the Recognition Motion in this case. By the Recognition Motion, the Foreign Representative seeks recognition of the Homologation Order entered in the Italian Concordato and procedures to close the chapter 15 case. In furtherance of the Homologation Order, the Foreign Representative also seeks an injunction enjoining creditors within the territorial United

---

[14] *Id.* at ¶ 20.
[15] *Id.* at ¶¶ 13, 20.
[16] *Id.* at ¶ 21. Mr. Crisoffanini states that all administrative expenses relating to the Concordato Preventivo were paid in full by June 30, 2016. Objectors dispute this statement as they assert their unpaid claims are administrative expense claims relating to the Concordato Preventivo. MacEachern Decl. at ¶ 22.
[17] *Id.* at ¶¶ 23–24.
[18] *Id.* at ¶ 25.

States from seeking judgments in the United States against Energy Coal or its property and from executing on its assets in the United States to collect on a debt owed by Energy Coal.[19]

*The Objectors' Claims*

11.   In January, 1999, Christopher MacEachern was engaged by Energy Coal as an independent contractor to source petroleum coke supply.[20] Thereafter, MELLC and Energy Coal executed that certain Memorandum of Operating Agreement dated May 11, 2005, as amended.[21] Further, Christine MacEachern and Energy Coal executed that certain Independent Contractor Agreement made effective as of October 1, 2007 (together with the Memorandum of Operating Agreement, as both were amended and extended, the "Agreements").[22] Collectively, Objectors sourced petroleum coke supply for Energy Coal, managed Energy Coal's related logistics in the United States, and provided various

---

[19] Specifically, the Foreign Representative seeks an order containing the following provision:
  The Homologation Order, the Plan, the Injunction and any further injunction, release, or similar provisions of the IIL which arise automatically upon approval of the Plan are recognized, granted comity, and entitled to full force and effect against all entities (as that term is defined in section 101(15) of the Bankruptcy Code) in accordance with their terms, and such terms (including any injunction, release or similar provision arising under the IIL) shall be binding and fully enforceable to the fullest extent provided thereunder and under the IIL. All Stakeholders, including without limitation, the Company's U.S. Creditors, are hereby enjoined from commencing or continuing within the territorial jurisdiction of the United States actions and/or claims against the Company that would otherwise be subject to the Homologation Order.
  For the avoidance of doubt, nothing in this Order shall impair any entity's rights in the *Concordato Preventivo* or under or the Homologation Order or the Plan. The Genova Bankruptcy Court shall retain the exclusive right to hear and determine any suit, action, proceeding, or dispute which may arise in the *Concordo Preventivo* or under the Homologation Order or the Plan.
Recognition Motion at Exhibit A ¶ 4–5.
[20] MacEachern Decl. at ¶ 1.
[21] *Id.* at ¶ 1, Exhibit A.
[22] *Id.* at ¶ 1, Exhibit A.

5

administrative and other services to Energy Coal.[23] These services continued for a time during the Concordato Preventivo and the chapter 15 case.[24]

12. On December 21, 2015, the Foreign Representative sent official notice of termination of both Agreements effective March 31, 2016.[25]

13. Objectors assert that they are owed money under each of the Agreements, and that such sums are entitled to payment in full under the Plan.[26] They assert they never received notice of the Concordato Preventivo or any applicable deadlines.[27] Objectors further assert that even if they had received notice of the deadlines they were not in a position to file a claim in the Concordato Preventivo because the orders in this chapter 15 case prevented them from participating in the Concordato Preventivo and/or from liquidating their claims.[28]

14. Energy Coal's books and records reflect that Christina MacEachern may be owed amounts from Energy Coal, subject to various defenses, counterclaims and setoff

---

[23] MacEachern Decl. at ¶¶ 2, 3. The Foreign Representative does not challenge the characterization or the extensive nature of the work Objectors performed for Energy Coal. As described by Objectors: "During this time, MacEachern and MELLC increased Energy Coal's petroleum coke supply sources from two to over fifteen refineries, managed its related logistics in the USA, traded both petroleum coke and coal worldwide, handling up to 2 million tons of product per year. MELLC activities were so integral to Energy Coal's business, that two of their largest supply contracts (with U.S. refiner PBF Energy) obligated Energy Coal to provide desk space to the refiner at MELLC's office in West Palm Beach Florida where the supervision and coordination of the refiner's petroleum coke movements from their two East Coast refineries were performed." MacEachern Decl. at ¶ 2.
[24] Cristoffanini Suppl. Decl. at ¶ 6; Final Report and Motion Hr'g Tr. at 25:19–26:3, May 11, 2017, D.I. 120.
[25] MacEachern Decl. at ¶ 6; Cristoffanini Suppl. Decl. at ¶ 6.
[26] Objectors assert that "net amounts [are] due MELLC, for mostly back wages and commissions" which would become due on the wind down of Energy Coal activities. MacEachern Decl. ¶ 5.
[27] MacEachern Decl. at ¶ 18.
[28] MacEachern Decl. at ¶ 20 ("It should be noted that even if the MacEacherns were to have received such notices allowing participation in the Italian proceedings, the MacEacherns were prohibited by the Automatic Stays and Provisional Relief Orders within the U.S. from pursuing or liquidating any amounts, or commencing any action against the Company or its Foreign Representative."); Final Report and Motion Hr'g Tr. at 70:13–18, 72:15–19.

rights.[29] Energy Coal's books and records reflect that MELLC is not owed amounts from the company, but rather is a net debtor to Energy Coal.[30] Energy Coal (and/or the Foreign Representative) has recognized communications from Objectors as timely assertions of claims in the Concordato Preventivo proceedings.[31]

15. Ms. Barbara Gambaro testified on behalf of the Foreign Representative. She is an attorney licensed and in good standing to practice in Italy, is a 2004 graduate of the University of Genova Law School, and was admitted to the bar of the general court of appeal on December 4, 2008.[32] Ms. Gambaro is a senior associate with Cristoffanini & Associates, which was retained by Energy Coal to represent it in the Italian Concordato proceedings.[33] The main focus of her practice is commercial bankruptcy and corporate insolvency law.[34]

16. Ms. Gambaro testified that Objectors' claim (if any) against Energy Coal is treated as a Class 5 unsecured claim under the Plan, but that notwithstanding that categorization, out of an abundance of caution, Energy Coal has reserved funds in the Plan to pay Objectors' claims in the event that they are allowed in whole or in part with a classification other than unsecured.[35] In this regard, the Plan provides for an increase in the risk provision for a sum amount to approximately €2.2 million, with a cash absorption of €1 million on account of Objectors' claims.[36] She further testified that, notwithstanding the

---

[29] Cristoffanini Suppl. Decl. at ¶ 8.
[30] *Id.* at ¶ 9.
[31] *Id.* at ¶ 11. It is not necessary to file a formal proof of claim in Italian insolvency proceedings if a claim is recognized by the filing company.
[32] Final Report and Motion Hr'g Tr. at 24:11–19.
[33] *Id.* at 24:11–21.
[34] *Id.* at 25:3–5.
[35] *Id.* at 34:5–16.
[36] *Id.* at 34:17–35:2; Cristoffanini Decl. at Ex. 1 p. 6.

classification of Objectors' claims as class 5 general unsecured claims, Objectors are able to challenge that classification before the Genova Bankruptcy Court, which can order an appropriate remedy.[37]

**The Parties' Positions**

17. Objectors do not object to this Court's recognition of the Plan and the Homologation Order, but do object to the requested discretionary relief in the form of the injunction. Objectors argue that they should not be enjoined from proceeding with their claims against Energy Coal in the United States, specifically in Florida, and they should not be precluded by the Plan in their ability to seek a 100% recovery. In particular, Objectors argue that the Agreements provide that they are governed by Florida law and that venue of any litigation regarding disputes under the contracts must proceed in the state of Florida. Objectors believe, therefore, that all of their disputes with Energy Coal—including both the liquidation of their claims and any dispute over priority and distribution—should be determined by a Florida court. They also object to the extent that MELLC's claims against Energy Coal would receive only the 7% payout under the Plan, but Energy Coal's claims against MELLC would be paid 100% on the dollar (i.e. an evisceration of setoff rights).[38]

18. Objectors also deny receiving notice of the Concordato Preventivo, any notices of applicable deadlines, including notice of the Andunanza dei Creditori, or a ballot. They contend that the evidence provided by the Foreign Representative of notice to Objectors shows only that such notices were sent, but does not evidence actual receipt. Objectors further contend that they have been precluded by the Recognition Order entered

---

[37] Final Report and Motion Hr'g Tr. at 35:3–9.
[38] *See* Additional Objection at 3.

8

in this case and the stay of proceedings against Energy Coal from liquidating their claims and Objectors should not be penalized for complying with the orders entered in the chapter 15 case. So, they argue, even if they had received "notices allowing participation in the Italian proceedings, [Objectors] were prohibited by the Automatic Stays and Provisional Relief Orders within the U.S. from pursuing or liquidating any amounts, or commencing any action against the Company or its Foreign Representative."[39]

19. Finally, Objectors argue that: (i) their claims against Energy Coal include claims that would be entitled to administrative treatment under the Plan, but that, unlike other claims of that nature, they were not previously paid; (ii) their claims have been classified in the plan as unsecured claims, but they arose after the Concordato Proceedings were commenced; and (iii) Energy Coal has stated that the treatment of their claims is closed and the Genova Bankruptcy Court may not revisit the classification of those claims.

20. The Foreign Representative's response is multipronged. First, he asserts that notice of the Concordato Proventivo and all relevant deadlines therein were provided to Objectors by the Italian Judicial Commissioners appointed by the Genova Bankruptcy Court. Second, he argues that any alleged lack of receipt of those notices cannot form the basis for denying the relief sought because Objectors also had notice of these chapter 15 cases, and Objectors had a long relationship with Energy Coal and continued communications with it and the Foreign Representative after the Concordato Proventivo proceedings were filed. Third, Energy Coal and the Foreign Representative have recognized Objectors' communications with the Foreign Representative as claims in the Concordato Proventivo, and have specifically established a reserve in the Plan for Objectors'

---

[39] MacEachern Decl. at ¶ 20.

9

claims if those claims are entitled to administrative treatment. Fourth, the Foreign Representative contends that the Injunction can and should be granted under § 1521 as long as the interests of U.S. creditors are protected and that such protection is found here because U.S. creditors could file claims in the Concordato Preventivo (if their claims were not recognized) and they are entitled to equal treatment with other creditors. Finally, the Foreign Representative has now agreed that Objectors may liquidate their claims in the United States. Any judgment, however, must be satisfied in the Genova Bankruptcy Court pursuant to the Plan.

*Jurisdiction*

21.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a). This is an enumerated core proceeding as set forth in 28 U.S.C. § 157(b)(2)(p), which provides that recognition of foreign proceedings and other matters under chapter 15 of title 11 are core.

22.   In its initial objection, Objectors stated that they did not consent to the entry of final orders by this Court.[40] They did not, however, make any legal argument regarding why the Recognition Motion is not core or why this Court cannot, consistent with the Constitution, enter a final order. As such, that argument is waived.[41] In any event, the requested relief—recognition of the Homologation Order in a foreign main proceeding and an injunction that enforces that order—could only arise in a chapter 15 case.[42] Accordingly,

---

[40] Response to the Partial Objection by MacEachern Energy LLC and Christina MacEachern at 1, Feb. 24, 2017, D.I. 94.
[41] *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 291 (Bankr. D. Del. 2017).
[42] *See Halper v. Halper*, 164, F.3d 830, 836 (3d Cir. 1999) ("To determine whether a proceeding is a 'core' proceeding, courts of this Circuit must consult two sources. First, a court must consult § 157(b). Although § 157(b) does not precisely define 'core' proceedings, it nonetheless provides an illustrative list of proceedings that may be considered 'core.' *See id.* § 157(b)(2)(A)-(O). Second, the

I conclude that I have both statutory and constitutional authority to enter a final order on the Recognition Motion.

***Discussion***

23. The Foreign Representative primarily relies on § 1521 of the Bankruptcy Code—titled "Relief that may be granted upon recognition"—to support his request for the injunction.[43] Section 1521 gives a court broad discretion to "grant any appropriate relief" to further the purpose of chapter 15.[44] In assessing requested relief under this section, the court

---

court must apply this court's test for a 'core' proceeding. Under that test, 'a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'") (citations omitted).

[43] Reply to Response and Partial Objection by MacEachern Energy LLC and Christina MacEachern, U.S. Creditors, to the Final Report and Motion of Augusto Ascheri, Foreign Representative of Energy Coal S.p.A. for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 350, 1507, 1509, 1517, 1521, and 1525 (I) Recognizing and Giving Full Force and Effect to Homologation Order Entered in Furtherance of the Company's Italian Debt Restructuring Plan; and (II) Authorizing Procedure to Close the Above-Captioned Chapter 15 Case at 4–5, Feb. 24, 2017, D.I. 95. Section 1507—titled "Additional assistance"—may also be available to the Foreign Representative. As some courts have recognized, the relationship between these two sections is less than clear. *See e.g. In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1054 n.24 (5th Cir. 2012) (citing cases). Because Objectors do not take issue with the application of § 1521, the Court will proceed to apply this section. *See id.* at 1053–1057 (discussing the framework of chapter 15 and concluding that the order of analysis is: (i) § 1521(a) and (b); (ii) § 1521's grant of any appropriate relief (i.e. relief previously available under former § 304); (iii) § 1507).

[44] 11 U.S.C. § 1521(a); *In re Daebo Int'l Shipping Co.*, 543 B.R. 47, 52–53 (Bankr. S.D.N.Y. 2015) (quoting *In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009)). Section 1521(a) provides:

    (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including —
        (1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);
        (2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);
        (3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);
        (4) providing for examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

11

should be "guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."[45] "Particularly in the bankruptcy context, 'American courts have long recognized the need to extend comity to foreign bankruptcy proceedings,' because '[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail.'"[46]

24.     Notwithstanding this broad nod to comity, chapter 15 does impose some limitations on recognition of foreign proceedings. As relevant here, § 1522 provides that relief under § 1521 may only be granted "if the interest of the creditors and other interested entities, including the debtor, are sufficiently protected."[47] Thus, the court can place conditions on the granting of relief under § 1521.[48]

25.     Section 1521 contains a non-exhaustive list of types of relief that may be appropriate in a given proceeding.[49] Granting an injunction in support of a plan that

---

(5)     entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;
(6)     extending relief granted under section 1519(a); and
(7)     granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

[45] *Id.* (citing *Atlas Shipping*, 404 B.R. at 739 (Bankr. S.D.N.Y. 2009)); 11 U.S.C. § 1509(b)(3) ("(b) If the court grants recognition under § 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter— . . . (3) a court in the United States shall grant comity or cooperation to the foreign representative.").
[46] *Atlas Shipping*, 404 B.R. at 733 (citing *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir. 1985)).
[47] 11 U.S.C. § 1522(a).
[48] *Vitro*, 701 F.3d at 1055 (recognizing that courts may impose conditions on the granting of relief under § 1521); *Atlas Shipping*, 404 B.R. 739–40 (same); *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005) (analyzing "sufficient protection" under former § 304(c), but noting that the analysis is in essence the same under § 1521(b)).
[49] The use of the word "including" in the Bankruptcy Code is not limiting. 11 U.S.C. § 102(3).

channels parties to the distribution scheme contained therein and otherwise staying execution against a debtor's assets falls within the relief specifically enumerated in § 1521(a)(7). Subsection (a)(7) provides that the court may grant "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 548, 550, and 724(a)." The requested relief is available to a trustee in a chapter 11 case as: (i) § 1121(c)(3) provides that a trustee may file a plan if the debtor has not done so within the specified timeframes, and (ii) the effect of confirmation of a plan results in a discharge and otherwise acts as an injunction prohibiting the commencement or continuation of an action to collect a debt.[50] Indeed, injunctions enforcing a plan are common features in orders confirming plans under chapter 11.

26.    Objectors do not really challenge the ability of the court to grant injunctive relief. Rather, Objectors argue that they should be excepted from this relief on multiple grounds. The Court will address each of those grounds in turn.

*(A) The Florida Venue Provisions in the Agreements*

27.    Energy Coal's agreement with MELLC provides that "This Agreement shall be governed by the laws of the State of Florida, and any suit involving this agreement may only be filed in the state or federal court having jurisdiction within the State of Florida."[51] Objectors argue that this provision means that they should be permitted to both liquidate their claims against Energy Coal in Florida and have a Florida court determine the payout on its claim (i.e. the priority of its claim). Objectors further contend that it would be

---

[50] *See* 11 U.S.C. §§ 1141(d), 524(a). *See also In re Ho Seok Lee*, 348 B.R. 799, 801–02 (Bankr. W.D. Wash. 2006) ("[P]ermanent injunctive relief is available under Chapter 15").

[51] Ex. A. The agreement between Energy Coal and Christina MacEachern provides that "This Agreement shall be governed by the laws of the State of Florida, and the United States of America." *Id.*

13

"unfair, cause us to incur substantial legal fees and push us into financial peril" if they were required to handle matters before the Genova Bankruptcy Court.[52] As the Foreign Representative has now agreed that Objectors can liquidate their claims in any court of competent jurisdiction, including the courts in Florida, the only remaining issue is whether Objectors must submit to the Genova Bankruptcy Court for a distribution on any liquidated claim (in the event that issue cannot be consensually resolved).

28.   Objectors cite no case law for the proposition that a choice of law provision in a contract should override the comity afforded foreign main proceedings vis-à-vis distributions on claims. Indeed, taken to its logical conclusion, Objectors' argument means the distribution scheme of a confirmed plan in a foreign main or non-main proceeding could be litigated in all the fora in which U.S. creditors have contracts containing forum selection clauses. This is not the law, nor is it appropriate or sensible. As recognized by other courts, "U.S. bankruptcy courts have not hesitated to require foreign creditors to file their claims and to litigate in our courts if they wish a distribution from a U.S. Debtor's estate. It is equally appropriate to expect U.S. creditors to file and litigate their claims in a foreign main bankruptcy case."[53] While the Court appreciates that there is additional cost to seeking

---

[52] Response by MacEachern Energy LLC and Christina MacEachern, U.S. Creditors, to Order Pursuant to 11 U.S.C. §§ 105(a), 350, 1507, 1509, 1517, 1521, and 1525 (I) Recognizing and Giving Full Force and Effect to Homologation Order Entered in Furtherance of the Company's Italian Debt Restructuring Plan; and (II) Authorizing Procedure to Close the Above-Captioned Chapter 15 Case at 3, Feb. 28, 2017, D.I. 99 ("Second MacEachern Response"). The potential hardship was not expounded on at the hearing.

[53] *Artimm*, 225 B.R. at 165 (citing *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003); *In re Brierley*, 145 B.R. 151, 163 (Bankr. S.D.N.Y. 1992)). *See also ABC Learning Centres Ltd.*, 728 F.3d 301, 310 (3d Cir. 2013) (endorsing the collective proceeding requirement—efficient, orderly and fair distribution— as consistent with U.S. policy and some of the "chief purpose[s] of the bankruptcy laws.") (quotations and citations omitted). Indeed, a case under the Bankruptcy Code is itself a collective proceeding in which claims against the Debtor are litigated in the Bankruptcy Court (unless relief from stay is granted) and decisions are made with respect to distributions under a Plan or per statute.

distribution of a claim in Italy, the Foreign Representative's agreement to permit liquidation of the claim in the United States strikes an appropriate balance in this case.

### *(B) Alleged failure of notice of the Concordato Preventivo*

29.   Each party adduced evidence regarding the notice provided to Objectors with respect to the Concordato Preventivo.

   *(i)   Evidence adduced by Energy Coal regarding notice:*

30.   Ms. Gambaro testified that Italian Judicial Commissioners, and not Energy Coal, are responsible for providing notice to Energy Coal's creditors of the Concordato Preventivo proceedings.[54] Italian Judicial Commissioners are third party professionals appointed by the Genova Bankruptcy Court; they are not employees of Energy Coal or its counsel.[55] The Italian Judicial Commissioners owe a fiduciary duty to ensure that creditors receive notice in the Concordato Preventivo and an opportunity to participate in the Concordato Preventivo.[56] Ms. Gambaro testified that the Italian Judicial Commissioners sent notice to Energy Coal's creditors by way of email through a system known as PEC.[57] Notices sent to Objectors through the PEC system were addressed to Objectors at macechearnenergy@att.net, which Christopher MacEachern testified is one of MELLC's email addresses, and which was used by Objectors in correspondence with Energy Coal and counsel to the Foreign Representative.[58] She also testified that "the use of the PEC system within the bankruptcy law and from – especially from the judicial commissioners, it's

---

[54] Final Report and Motion Hr'g Tr. at 30:8–17, 41:22–42:5.
[55] *Id.* at 30:8–13.
[56] *Id.* at 30:14–17.
[57] *Id.* at 30:18–23.
[58] *Id.* at 52:22–53:9. It is also the email address that appears on submissions in this chapter 15 case, including the McEachern Declaration.

15

usual."[59] The Notices and the "Receipts of Acceptance" reflecting the forwarding of the Notices by email to the email address maceachernenergy@att.net, together with the English translations of these documents, were introduced by the Foreign Representative as Exhibits 1 and 2.

  *(ii) Evidence adduced by Objectors regarding notice:*

  31. While Objectors admit that they knew generally of the Concordato Preventivo and were served with filings in this chapter 15 case, Christopher MacEachern testified that Objectors did not actually receive any of the Notices sent by the Italian Judicial Commissioners. Under cross-examination, Ms. Gambaro admitted that the "Receipts of Acceptance" do not show that Objectors received the emails, but only that the Notices were sent by the Italian Judicial Commissioners through the PEC system. Ms. Gambaro further admitted that she did not know whether Energy Coal attempted to confirm that Objectors had actually received the Notices. The Receipts of Acceptance provide that the message "was accepted by the system and forwarded." Objectors argued, based on information found on the internet and attached to their submissions,[60] that sending an email thought the PEC system to a party that has a traditional (i.e. non-PEC system) email does not assure the certainty of receipt nor the integrity of the content and that "the sending and receiving of messages PEC have full legal effect only in the event that both the sender and the recipient are provided with a box of Certified Mail".[61]

  32. Based on the record, the Court finds that under the IIL the Judicial Commissioners retained by the Genova Bankruptcy Court are tasked with providing all

---

[59] *Id.* at 42:3–5.
[60] Second MacEachern Response at Ex. A ("sicurezzapostale.it FAQ").
[61] *Id.*

16

relevant notices to creditors of the Concordato Preventivo, that they are charged with a fiduciary duty to ensure such notices are sent, and that they sent such notices to Objectors at an email regularly used by Objectors. While neither party provided citation to legal authority regarding whether the sending of emails by the Italian Judicial Commissioners to Objectors in this fashion is competent service of documents under the laws of Italy, given the independence of the Judicial Commissioners, their appointment by the Court and their charge, and Ms. Gambaro's testimony regarding the use of the PEC system by the Judicial Commissioners, it seems reasonable to conclude for purposes of the Recognition Motion that service was sufficient under the IIL.[62]

33. The Foreign Representative also argues that the combination of Objectors' general awareness of the chapter 15 proceedings (which is not denied), the notices provided in the chapter 15 proceedings (which is not denied, but which did not provide notice of applicable dates in the Concordato Preventivo), and the claims submitted by Objectors to the Foreign Representative (which are not formal proofs of claim, but rather email

---

[62] Federal Rule of Civil Procedure 4, which governs service in federal proceedings, does not yet permit service by email generally, but some courts have permitted service by email on a case-by-case basis. *See, e.g., Hydentra HLP INT Ltd. v. Sagan Ltd.*, No. CV-16-01494-PHX-DGC, 2017 WL 490371 (D. Ariz. February 7, 2017) (permitting substitute service by email, consistent with *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), when defendants are aware of lawsuit, when the alternate service will not disadvantage defendants, and when defendants have evaded service.) There is no suggestion that Objectors have evaded service here. Moreover, under the common law "mailbox rule," denial of receipt of a document placed in the mail is not usually sufficient to rebut proper service. *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 319 (3d Cir. 2014) ("The presumption of receipt derives from the longstanding common law 'mailbox rule.' Under the mailbox rule, if a letter 'properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed . . . that it reached its destination at the regular time, and was received by the person to whom it was addressed.'") (quoting *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884)). The conclusion in this Memorandum Order regarding notice is based on the record in this case and is not intended to foreclose Objectors from arguing in any proceedings in the Genova Bankruptcy Court that notice was not sufficient under the IIL for purposes other than the Recognition Motion.

communications)[63] provide sufficient process to warrant the requested relief vis-à-vis Objectors.

34.     The Court concludes, with the one possible exception discussed below, that the interest of Objectors are sufficiently protected so as to warrant the requested relief even if notice may not have been perfect. First, the Italian Judicial Commissioners charged with sending notice and protecting creditors' interests sent notices to Objectors at an email address they have used with the Foreign Representative, Energy Coal and this Court. Second, under Italian law, the email communications between Objectors and the Foreign Representative suffice to constitute claims in the Concordato Preventivo. Those communications evidence an awareness of the Concordato Preventivo and the need for the Genova Bankruptcy Court to rule on the priority of Objectors' claims.[64] Third, the Foreign Representative, in fact, treated communications from Objectors as claims in the Concordato Preventivo and because of those communications, the Foreign Representative established a risk provision in the Plan in the amount of €2.2 million in the event that Objectors are correct and their claims entitle them to a 100% distribution under the Plan.[65] Fourth, the Genova Bankruptcy Court can consider the classification of Objectors' claims and, if consistent with Italian Law, reclassify their claims to administrative claims (i.e. Objectors' argument in this regard is not futile). Finally, based on the record it is clear that even had

---

[63] Cristoffanini Suppl. Decl. at Ex. 4. This exhibit was admitted for the proposition that there were communications between MacEarchen and the Foreign Representative, and not for the truth of the submissions. Final Report and Motion Hr'g Tr. at 32:21–33:10.

[64] *See, e.g.*, MacEachern Decl. at Ex. 2 (email from MELLC to Augusto Ascheri dated December 7, 2015 setting forth in summary fashion claims against Energy Coal and demands for indemnity and releases in connection with the winding down of the Agreements, and further stating: "Also, we understand that our commissions and retainers are prioritized under the Condordato [sic] so we need the Italian Court to confirm that.").

[65] Objectors have not suggested that the sum established is not sufficient to pay their claims in full.

Objectors received notice they would not have filed a claim nor participated in the Concordato Preventivo because of their misperception that the Orders entered in this chapter 15 case either prohibited such actions or effectively prohibited them. Accordingly, under the unique circumstances of this case, the Court finds sufficient protections have been provided to Objectors with respect to their claims in the foreign proceedings such that there is no prejudice to them in proceeding in the Genova Bankruptcy Court to obtain a distribution on their claims.[66]

### (C) Setoff/Recoupment Claims

35. While the Court has found that it is appropriate for Objectors to seek a distribution on their claims in the Concordato Preventivo, Objectors have raised the prospect that valid setoff or recoupment rights vis-à-vis claims Energy Coal may be cut off. Objectors point out that the Foreign Representative asserts that the debits/credits between Energy Coal and MELLC run in favor of Energy Coal (i.e. Energy Coal is the net creditor).[67] From this, Objectors argue that they may be made to pay 100 cent dollars to the Foreign Representative, but may only receive 7 cent dollars under the Plan for their claims against Energy Coal.[68] The Foreign Representative did not provide any response to this assertion nor any legal authority on this point under Italian law.[69]

---

[66] *Cf. In re ABC Learning Ctrs., Ltd.*, 445 B.R. 318, 329 (Bankr. D. Del. 2010) (finding an "objection unpersuasive" when notice was proper under law of foreign main proceeding, creditor received actual notice of one creditor meeting, though not others, and creditor could seek redress from the foreign court).

[67] Cristoffanini Suppl. Decl. at Ex. 4 (reflecting Energy Coal's position of a credit balance in favor of Energy Coal).

[68] Additional Objection at 3.

[69] Under the Bankruptcy Code, setoff rights are secured claims to the extent of the claim under 11 U.S.C. § 506, and recoupment is a defense to a claim brought by another. *See generally Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984) ("Recoupment ... allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be "setoff" under 11 U.S.C. § 553. The justification for the recoupment doctrine is that where the

19

36. While setoff or recoupment may not be an issue in the event that MELLC is successful on its arguments regarding the proper classification of its claim under the Plan, it is not clear what happens in the event Objectors are left with unsecured claims. To the extent that the Foreign Representative has claims against Objectors, the Foreign Representative has not asserted in this Court that setoff or recoupment is barred under Italian law or that the Homologation Order precludes the assertion of these rights. And, it appears that the Plan has preserved Energy Coal's rights of setoff.[70]

37. The Court views a defensive use of setoff or recoupment (to the extent valid) against claims asserted by Energy Coal or the Foreign Representative seeking an affirmative recovery from MELLC and/or Christine MacEachern differently than the assertion of a claim against Energy Coal. Thus, should Energy Coal bring affirmative claims against MELLC (which claims may be governed by the forum selection clause in the contract, an issue not decided herein), nothing in this Court's recognition of the Homologation Order shall serve to cut off those rights.

An Order consistent with the ruling shall follow.

Dated: January 2, 2018

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a *defense* to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.") (emphasis added) (citing *In re Monongahela Rye Liquors,* 141 F.2d 864, 869 (3d Cir.1944)).
[70] Cristoffanini Suppl. Decl. at ¶ 8.